**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CITY OF LAKEWOOD, | NO. 91827-9 |
| Respondent, | |
| v. | EN BANC |
| ROBERT WILLIS, | |
| Petitioner. | Filed    JUL 2 1 2016 |

GORDON McCLOUD, J.—A city of Lakewood police officer saw Robert Willis walk into the traffic lanes at Interstate 5's (I-5) northbound exit ramp on Gravelly Lake Drive. Willis carried a sign saying he was disabled and needed help. The officer issued Willis a criminal citation. But the officer did not cite Willis for walking into the traffic lane, blocking traffic, or disrupting pedestrian or vehicle progress. Instead, the officer cited Willis for begging.[1] Willis raised several

---

[1] Lakewood has an ordinance making a person guilty of disorderly conduct if he or she "'[i]ntentionally obstructs vehicular or pedestrian travel or traffic without lawful

challenges to his subsequent conviction, including a First Amendment challenge to the antibegging ordinance under which he was charged. U.S. CONST. amend. I. The courts below affirmed his conviction. *City of Lakewood v. Willis,* noted at 186 Wn. App. 1045, 2015 WL 1552179, *review granted,* 184 Wn.2d 1010 (2015). We accepted review and now reverse.

## FACTS

The city of Lakewood (Lakewood or City) charged Willis with one count of "Begging In Restrictive Areas" in violation of Lakewood Municipal Code (LMC) 9A.04.020A. Clerk's Papers (CP) at 16 (boldface omitted). That ordinance prohibits "begging"—defined as "asking for money or goods as a charity, whether by words, bodily gestures, signs or other means,"[2]

> under the following conditions: (1) at on and off ramps leading to and from state intersections from any City roadway or overpass; (2) at intersections of major/principal arterials (or islands on the principal arterials) in the City; (3) within twenty five (25) feet of an ATM [automated teller machine] or financial institution; (4) within fifteen (15) feet of any (a) occupied handicapped parking space, (b) taxicab stand, or (c) bus stop, train station or in any public parking lot or structure or walkway dedicated to such parking lot or structure; (5) before sunrise or after sunset at any public transportation facility or on any public transportation vehicle or (6) while a person is under the influence of alcohol or controlled substances.

---

authority.'" Opening Br. of Appellant at 13 (quoting LAKEWOOD MUNICIPAL CODE 9A.08.010). Willis was neither charged with nor convicted of violating that ordinance.

[2] LMC 9A.04.020(E).

LMC 9A.04.020A. Begging under any of these conditions is a misdemeanor in Lakewood, punishable by a fine up to $1,000 or a jail term up to 90 days, or both. LMC 9A.04.030.

The complaint filed in Willis' case did not specify the "[r]estrictive area[]" in which Willis begged; it just cited LMC 9A.04.020A in its entirety. But the jury was ultimately instructed on only the first two "conditions" listed in the ordinance: begging "at on and off ramps" and "at intersections of major/principal arterials." LMC 9A.04.020A.[3]

The jury found Willis guilty. The municipal court sentenced him to 90 days in jail and a fine of $1,000, with 90 days and $750 suspended. The court also assessed $125 in costs.

---

[3] The Clerk's Papers do not contain a copy of the jury instructions, but they do contain a transcript of a trial court colloquy on the to-convict instructions. This transcript indicates that the parties agreed to strike all but the first two locations from the to-convict instruction. At oral argument in this court, the City conceded that the jury was instructed on both the ramp and intersection provisions of the begging ordinance. Wash. Supreme Court oral argument, *City of Lakewood v. Willis*, No. 91827-9 (Feb. 16, 2016), at 18 min., 18 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org; *see also* Resp't's Resp. to Amicus at 6-7 (conceding that colloquy in clerk's papers indicates jury was instructed on two "restrictive areas": "freeway ramps and intersections").

Willis appealed his conviction to the superior court, raising several constitutional challenges for the first time.[4] Specifically, Willis argued that the entire ordinance violated his First Amendment right to free speech, was unconstitutionally vague in violation of the Fourteenth Amendment's due process clause, and violated Fourteenth Amendment equal protection principles by criminalizing poverty. U.S. CONST. amends. I, XIV. The parties agree that Willis has raised both a facial and an as applied challenge under the First Amendment.[5]

The superior court appeared to identify some constitutional problems with Lakewood's begging ordinance: it noted the difficulty of distinguishing between a location "at" a freeway ramp, where the ordinance prohibited begging, and a location "on the public street," where the ordinance supposedly did not prohibit begging.

---

[4] Again, the record is poorly developed on this issue. At oral argument in this court, Willis' counsel conceded that Willis did not raise a facial constitutional challenge at the municipal court. Wash. Supreme Court oral argument, *supra*, at 37 min., 39 sec. The transcript of the municipal court proceedings indicates, however, that the City already had some notice of Willis' constitutional objections at that point. *See* CP at 38 (prosecuting attorney stating that "I understand that for a period of time Mr. Willis may have been pro se, and that one of his overriding concerns was the constitutionality of the statute [but] I'd ask the Court enter an order in limine prohibiting any arguments, suggestion or otherwise, as it relates to the constitutionality of the (inaudible) at issue. That's a question of law for the Court and there's never been a motion filed on that point. It speaks to jury nullification which is clearly irrelevant"; defense counsel responding that "in regards to this case to this point here and for the purpose of the trial, I don't see any arguments in regards to the constitutionality of the statute, at least to arguments to the jury[;] [t]here's a possibility of an appealable issue, but no issue at trial").

[5] Wash. Supreme Court oral argument, *supra*, at 15 min., 9 sec.

4

Report of Proceedings (RP) (June 7, 2013) at 5 ("the difference here in terms of what is at an on- and off-ramp versus being just a few feet away on the public street may make this a very difficult piece of legislation for purposes of people having some notice of what's legal or not legal"). But the court nevertheless affirmed Willis' conviction because "[i]n this *particular case* . . . Mr. Willis was actually seen *in* the [off]ramp." *Id.* (emphasis added).

The Court of Appeals granted Willis' motion for discretionary review and conducted a similar analysis. It began by asserting, erroneously, that "Willis was convicted of begging *on* a freeway [off]ramp." *Willis*, 2015 WL 1552179, at *3 (emphasis added).[6] The court then went on to hold that a freeway ramp is not a public forum and that the government may therefore impose reasonable, viewpoint neutral restrictions on speech on freeway ramps. *Id.* ("[f]reeway onramps are not, and have never been, principally intended as a forum for the exchange of ideas"). Like the superior court, the Court of Appeals noted that Willis entered the lane of vehicle travel: "Allowing expressive activity *in* the freeway and its onramps would disrupt the principal purpose of the freeway which is to facilitate travel. In fact, Willis'[] activities disrupted travelers because he entered the lane of travel and

---

[6] As explained above, Willis' jury was instructed to convict if it found that Willis begged either "at" an on-or-off ramp *or* "at" an intersection. *See supra* at 2 & n.2.

5

approached cars." *Id.* (emphasis added).[7] The Court of Appeals affirmed Willis'

conviction.

We granted Willis' petition for review and now reverse.

### ANALYSIS

The basic First Amendment principles applicable in this case are clear and,

for the most part, undisputed by the parties.

The First Amendment protects "charitable appeals for funds," *Village of*

*Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632, 100 S. Ct. 826, 63 L.

Ed. 2d 73 (1980), including appeals in the form of begging or panhandling, *Gresham*

*v. Peterson*, 225 F.3d 899, 904 (7th Cir. 2000); *Smith v. City of Fort Lauderdale*,

177 F.3d 954, 956 (11th Cir. 1999); *Loper v. N.Y. City Police Dep't*, 999 F.2d 699,

704 (2d Cir. 1993). As protected speech, begging may be subject to reasonable time,

place, or manner restrictions. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109

S. Ct. 2746, 105 L. Ed. 2d 661 (1989). The government bears the burden of

---

[7] There is conflicting evidence in the record as to whether Willis "disrupted travelers." *Willis*, 2015 WL 1552179, at *3. At trial, the officer who cited Willis testified that he received a 911 call from a citizen "complain[ing] of an individual aggressively begging and banging on their car." CP at 56. Willis testified that while he was soliciting work at the Gravelly Lake Drive I-5 exit, two people approached him and told him to leave that corner because they wanted to "panhandle" it. CP at 74. Willis stated that he told them he wouldn't be there long and "[t]he next thing [he] kn[ew], an officer showed up." *Id.* But the jury was never asked to evaluate this evidence or make a determination on this issue, since disrupting traffic is not an element of the crime with which Willis was charged.

6

justifying its restrictions on speech. *Collier v. City of Tacoma*, 121 Wn.2d 737, 753-59, 854 P.2d 1046 (1993).

A law restricting speech is subject to different levels of scrutiny, depending on the "forum" in which it operates. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983); *City of Seattle v. Mighty Movers, Inc.*, 152 Wn.2d 343, 349-50, 96 P.3d 979 (2004). Thus, in a First Amendment challenge, we begin by identifying the forum at issue. *Mighty Movers*, 152 Wn.2d at 349-351. A law restricting expression in a traditional public forum is subject to the highest level of judicial scrutiny: it must be "'content neutral and narrowly tailored to serve a significant government interest and it must leave open ample alternative channels of communication.'" *Id.* at 350 (quoting *Perry Educ. Ass'n*, 460 U.S. at 45). A law restricting expression in a limited or nonpublic forum, by contrast, must only be viewpoint neutral and "'reasonable in light of the purposes served by the forum.'" *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 804-06, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985)). The parties to this case agree that streets, sidewalks, and roadways generally constitute traditional public forums subject to the strictest free speech protections. *See Collier*, 121 Wn.2d at 746-47 ("[t]he traditional public forum

7

includes those places 'which by long tradition . . . have been devoted to assembly and debate,' such as parks, streets, and sidewalks" (internal quotations omitted) (quoting *Burson v. Freeman*, 504 U.S. 191, 196, 112 S. Ct. 1846, 119 L. Ed. 2d 5 (1992))).

Because Willis raised his constitutional challenge for the first time on appeal, the City argues that he should bear the burden of any defect in the factual record. Resp't's Suppl. Br. at 7 ("without a developed record, the claimed error may not satisfy RAP 2.5(a)(3)"). In this case agree, we with the City, and with the Court of Appeals, that it would be improper to review Willis' constitutional claim if the City had been precluded from developing the factual record necessary to defend its ordinance. *See Willis*, 2015 WL 1552179, at *3 n.4; *see also State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (where record is insufficient to evaluate a claim of error on its merits, the error is not "manifest" under RAP 2.5(a)(3)). But for the reasons given below, we conclude that we can resolve Willis' facial First Amendment challenge by answering two purely legal questions: first, whether the provisions of LMC 9A.04.020A at issue here, LMC 9A.04.020A(1) and (2), apply in a substantial number of traditional public forums; and, second, whether those provisions are content based.

I.   THE LOWER APPELLATE COURTS ERRED BY RELYING ON WILLIS'
     ENTRY INTO THE LANE OF VEHICLE TRAFFIC TO REJECT HIS FIRST
     AMENDMENT CHALLENGE

Before addressing the merits of Willis' claim, we must correct an error in the lower appellate courts' analyses. As noted above, both the superior court and the Court of Appeals rejected Willis' First Amendment challenge because they concluded that governments may restrict speech "in" a freeway ramp. RP (June 7, 2013) at 5; *Willis*, 2015 WL 1552179, at *3. Thus, both of those courts treated the question presented as essentially one of evidentiary sufficiency. Because the trial record contained evidence that Willis entered the lane of vehicle travel in the ramp, the courts concluded that his speech occurred in a nonpublic forum and that his constitutional challenge must therefore fail. In other words, the lower appellate courts rewrote the ordinance on review so that it prohibited speech "in" freeway ramps[8] instead of "at" both ramps and intersections.[9]

This approach conflicts with controlling authority on how to address facial First Amendment challenges. First, the court may construe an ambiguous law so as to avoid a constitutional infirmity, but separation of powers principles bar the court from rewriting the law's plain terms. *United States v. Stevens*, 559 U.S. 460, 481,

---

[8] RP (June 7, 2013) at 5; *Willis*, 2015 WL 1552179, at *3.

[9] LMC 9A.04.020(1), (2).

130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) (in First Amendment challenge, "[w]e 'will not rewrite a . . . law to conform it to constitutional requirements,' for doing so would constitute a 'serious invasion of the legislative domain' and sharply diminish [the legislature's] 'incentive to draft a narrowly tailored law in the first place'" (second alteration in original) (citations omitted) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 884, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997); *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 479 n.26, 115 S. Ct. 1003, 130 L. Ed. 2d 964 (1995); *Osborne v. Ohio*, 495 U.S. 103, 110, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990))). Thus, we cannot pretend the ordinance bars protected speech "in" freeway ramps[10] rather than "at" ramps and intersections.[11] Second, in a First Amendment facial challenge, "a defendant's standing . . . does not depend upon whether his own activity is shown to be constitutionally privileged." *Bigelow v. Virginia*, 421 U.S. 809, 815, 95 S. Ct. 2222, 44 L. Ed. 2d 600 (1975). Thus, we may not dispose of Willis' First Amendment challenge solely on the ground that "his own conduct could [have been] regulated by a statute drawn with the requisite narrow specificity." *Id.* at 815-16. Instead, Willis clearly has standing to challenge any provision of Lakewood's begging ordinance at issue here and must

---

[10] RP (June 7, 2013) at 5; *Willis*, 2015 WL 1552179, at *3.

[11] LMC 9A.04.020(1), (2).

prevail if he shows that "it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). With respect to that question, Willis' actual conduct is irrelevant.

Willis focused on the first two provisions in his briefing—particularly the provision applicable to "intersections." He has not provided briefing on the constitutionality of the remaining provisions, so we do not address them. *See* Suppl. Br. of Pet'r Robert Willis at 6 ("The intersection where Willis was arrested has a sidewalk, crosswalk and traffic signal accessible by everyone in the general public and is used as a thoroughfare for Gravelly Lake Drive . . . . Unlike interstate highways, the intersection of interstate off-ramps and city streets are traditional public forums, just as the intersections of other roads."). In fact, although Willis mentions the ordinance as a whole, his only specific arguments are about the portions under which he was convicted. *E.g.*, *id.* at 16 ("Many of the prongs of the Begging Ordinance are public forums and therefor unconstitutional. This includes the prong that begging is illegal 'at intersections of major/principal arterials (or islands on the principal arterials) in the City.' LMC 09[A.0]4.020A(2).").

II.  WILLIS WAS CONVICTED OF VIOLATING A LAW THAT PROHIBITS A SUBSTANTIAL AMOUNT OF PROTECTED SPEECH, SO HIS CONVICTION MUST BE REVERSED

Unlike the lower appellate courts, the City does not maintain that Willis' conviction should be affirmed solely because the record indicates he entered a lane

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of vehicle travel. Instead, the City argues that we should restrict our constitutional review to LMC 9A.04.020A's first provision because Willis "was convicted under the prong involving freeway ramps." Resp't's Suppl. Br. at 2. But, as noted above, Willis' jury was instructed to convict if it found that Willis violated *either* LMC 9A.04.020A(1) (applicable "at" freeway ramps) *or* LMC 9A.04.020A(2) (applicable "at" major intersections). And the officer who cited Willis testified that he "responded to [the] *intersection* . . . [at] the northbound I-5 exit to Gravelly Lake Drive" and that he "saw an individual who was on the northbound ramp of I-5 at the *intersection* facing southbound towards traffic." CP at 56 (emphasis added). Thus, the evidence was sufficient to convict Willis under either the ramp or the intersection provision of LMC 9A.04.020A. Accordingly, he may challenge both provisions.[12]

---

[12] The concurrence believes we must invalidate all six provisions of LMC 9A.04.020A, concurrence at 2, even though Willis has briefed only two of those provisions in any substantive way: the two provisions on which his jury was actually instructed and under which he was convicted. Indeed, the concurrence would strike down all of these provisions without even conducting any First Amendment analysis specific to their varied language. *See* concurrence at 3 (concluding that the entire ordinance "substantially restricts protected speech in a wide range of public forums" without explaining whether the forums listed in those subsections are "public" and how that affects the analysis). The concurrence believes that this is the proper result because "we may not 'sever' portions of statutes or ordinances prior to considering whether they make 'unlawful a substantial amount of constitutionally' protected conduct." *Id.* at 2 (internal quotation marks omitted) (quoting *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989)). But we are not conducting a severability analysis, we are tracking Willis' arguments—that is, his failure to argue—about the subsections on which his jury was not instructed. In addition, the cases on which the concurrence relies for its antiseverability theory do not support it. Indeed, both cases *upheld* the laws at issue. *Broadrick v. Oklahoma*, 413 U.S. 601, 615-16, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) (holding that statute regulating civil servants' political

Willis argues that both provisions violate First Amendment protections, since both impose content-based speech restrictions in a substantial number of locations that are traditional public forums. Suppl. Br. of Pet'r Robert Willis at 6 ("the city streets intersecting with freeway ramps "are traditional public forums, just as the intersections of other roads [are]"). We agree.

### A. LMC 9A.04.020A(1) and (2) apply to locations that are likely to have sidewalks, which are generally held to be traditional public forums

It is undisputed that there are sidewalks "at" many freeway ramps and major intersections in Lakewood. LMC 9A.04.020A(1), (2).[13] For this reason, we

---

activities was not sufficiently overbroad to require total invalidation and would instead be subject only to as-applied challenges); *Huff*, 111 Wn.2d at 925-28 (upholding the telephone harassment ordinance at issue because the telephone is not a public forum). Contrary to the concurring opinion, neither *Huff* nor *Broadrick* stands for the principle that where a party does not make any substantive First Amendment argument at all regarding provisions in a law under which he was not actually convicted, the appellate court must supply its own constitutional analysis. That would be particularly challenging in cases like this one, where some of the unbriefed provisions are significantly different in scope and application from those the challenger actually briefed. *E.g.*, LMC 9A.04.020A (3) (applicable "within twenty five (25) feet of an ATM machine, or financial institution"); LMC 9A.04.020A (6) (applicable "while a person is under the influence of alcohol or controlled substances").

We are sensitive to the concurring opinion's concerns regarding the "chilling effect" of speech restrictions. Concurrence at 3. With adequate briefing, a party might succeed in an overbreadth challenge to provisions in a law under which he or she was not convicted. But we lack such briefing here. The concurrence tacitly acknowledges this by offering absolutely no explanation for its conclusion that every single separate provision in LMC 9A.04.020A violates First Amendment protections.

[13] In his briefs in this court and the Court of Appeals, Willis asserted that the location at which he was cited "has a sidewalk, crosswalk and traffic signal." Opening Br. of

13

conclude that LMC 9A.04.020A(1) and (2) cover many traditional public forums. It is true that the presence of a sidewalk is not dispositive in a forum analysis; a sidewalk can be a nonpublic forum under certain circumstances—specifically, where it exists solely to facilitate access to a private or quasi-private location.[14] But the City, which bears the burden on this question,[15] has made no attempt to show that that condition is met in this case. If there is a sidewalk at any freeway ramp or intersection in Lakewood, it presumably isn't there to facilitate access to private property. Instead, it is "indistinguishable from any other sidewalks . . . [and thus] may be considered, generally without further inquiry, to be public forum property." *United States v. Grace*, 461 U.S. 171, 179, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983).

---

Appellant at 8; Suppl. Br. of Pet'r Robert Willis at 6. The City does not dispute this assertion.

[14] *See Sanders v. City of Seattle*, 160 Wn.2d 198, 211-14, 156 P.3d 874 (2007) (collecting cases holding that certain sidewalks are nonpublic forums because they facilitate access to a specific location rather than functioning as thoroughfares: e.g., *Chicago Acorn v. Metropolitan Pier & Exposition Authority*, 150 F.3d 695, 702 (7th Cir. 1998) (sidewalk not public forum since, "[r]ather than being part of the city's . . . transportation grid, [it is] . . . internal to the pier," which is "its own little world of delights . . . like a major airport, which the Supreme Court . . . refused to classify as a public forum"); *United States v. Kokinda*, 497 U.S. 720, 727-28, 110 S. Ct. 3115, 111 L. Ed. 2d 571 (1990) (plurality opinion) (sidewalk not public forum since it was "constructed solely . . . to assist postal patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city"); *United States v. Grace*, 461 U.S. 171, 179, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983) (sidewalk is public forum if it is "indistinguishable from any other sidewalks in [the city]").

[15] *Collier*, 121 Wn.2d at 753-59.

In defense of LMC 9A.04.020A(1), which prohibits begging "at on and off ramps," the City cites three cases holding that "[f]reeway related locales"[16] are not public forums for First Amendment purposes. But these cases do not support the City's argument. The first case, *Jacobsen v. Bonine*, holds that "the perimeter walkways of interstate rest areas are [not] public forums" because they are "not traditional sidewalks, accessible to and from general pedestrian traffic." 123 F.3d 1272, 1273-74 (9th Cir. 1997). This reasoning supports Willis' argument that the sidewalks "at," LMC 9A.04.020A(1), ramps in Lakewood *are* public forums—they are "accessible to and from general pedestrian traffic," 123 F.3d at 1274. The second case the City cites, *Sentinel Communications Co. v. Watts*, addresses only "safety rest areas" on the interstate highway system, and is thus inapposite. 936 F.2d 1189, 1203 (11th Cir. 1991) ("as modern phenomena, rest areas have never existed independently of the Interstate System; they are optional appendages that are intended . . . to facilitate safe and efficient travel by motorists along the System's highways"). And the final case the City cites, *San Diego Minutemen v. California Business, Transportation & Housing Agency's Department*, holds only that the government did not create a limited public forum when it created the Adopt-a-

---

[16] Resp't's Suppl. Br. at 8.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Highway program. 570 F. Supp. 2d 1229, 1250 (S.D. Cal. 2008). It contains no reasoning relevant to this case.

Because they apply to every sidewalk "at on and off ramps leading to and from state intersections from any City roadway or overpass," LMC 9A.04.020A(1), and every sidewalk "at intersections of major/principal arterials (or islands on the principal arterials) in the City," LMC 9A.04.020A(2), both of the ordinance provisions on which Willis' jury was instructed cover a substantial number of locations that constitute traditional public forums.

B. LMC 9A.04.020(1) and (2) impose content-based restrictions on speech

As discussed above, the government can impose certain restrictions on speech in a public forum, such as reasonable time, place, and manner restrictions. But it cannot impose restrictions based on content. LMC 9A.04.020(1) and (2) impose content-based restrictions on speech. If there was any doubt about this when the City enacted the begging ordinance, that doubt has been definitively resolved by the United States Supreme Court's recent decision in *Reed v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218, 2227, 192 L. Ed. 2d 236 (2015). In that case, which addressed a local ordinance regulating the display of outdoor signs, the Court explained that a law is content based if "'on its face' [it] . . . define[s] regulated speech by particular subject matter . . . [or] *by its function or purpose*" (emphasis added) (quoting *Sorrell*

*v. IMS Health, Inc.*, 564 U.S. 552, 556, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011)).

Lakewood's begging ordinance clearly meets this definition. It does not prohibit

solicitation generally (it allows, for example, the solicitation of votes or customers),

but only solicitation with a particular purpose: obtaining "money or goods as a

charity." LMC 9A.04.020(E).

The City argues that *Reed* should essentially be limited to its facts; it points

out that *Reed* did not address an antisolicitation law and that the United States

Supreme Court has called such laws "content neutral" in cases predating *Reed*.[17] But

two of those cases addressed laws that are distinguishable from Lakewood's begging

ordinance for precisely the reason the Court deemed dispositive in *Reed*: these laws

restricted solicitation of *any* kind as opposed to solicitation with a particular purpose

(e.g., obtaining a charitable donation).[18] And the third case does not contain any

---

[17] Resp't's Suppl. Br. at 13-15 (citing *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981); *Kokinda*, 497 U.S. at 736; *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 112 S. Ct. 2701, 120 L. Ed. 2d 541 (1992)).

[18] *See Heffron*, 452 U.S. at 649 (rule is content neutral because it "applies evenhandedly to all who wish to distribute and sell written materials or to solicit funds [and] [n]o person or organization, whether commercial or charitable, is permitted to engage in such activities"); *Kokinda*, 497 U.S. at 724 (addressing regulation prohibiting "'[s]oliciting alms and contributions, campaigning for election to any public office, collecting private debts, commercial soliciting and vending, and displaying or distributing commercial advertising on postal premises'" (quoting former 39 C.F.R. § 232.1(h)(1) (1989))).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

content-neutrality analysis at all.[19] Thus, we reject the City's argument and hold that Lakewood's begging ordinance is content based under *Reed*. In reaching that conclusion, we join the overwhelming majority of courts that have addressed similar antibegging laws after *Reed*. *E.g.*, *Norton v. City of Springfield*, 806 F.3d 411, 412-13 (7th Cir. 2015) (antipanhandling ordinance content based under *Reed*); *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1287 (D. Colo. 2015) (antipanhandling ordinance content based under *Reed*); *Thayer v. City of Worcester*, 144 F. Supp. 3d 218, 233 (D. Mass. 2015) ("as to [o]rdinance [prohibiting aggressive requests for the immediate donation of value or exchange of goods or services], a protracted discussion of this issue is not warranted as substantially all of the Courts which have addressed similar laws since *Reed* have found them to be content based and therefore, subject to strict scrutiny").

## CONCLUSION

Willis may challenge LMC 9A.04.020A(1) and (2) as facially overbroad regardless of his own conduct when cited. Because both provisions impose a content-based speech restriction in a substantial number of traditional public forums, Willis' facial challenge succeeds. Thus, his conviction must be reversed.

---

[19] *Krishna Consciousness*, 505 U.S. at 679, 683 (because airport is not a public forum, restriction on solicitation need only be reasonable and viewpoint neutral).

18

_Gordon McCloud, J._

WE CONCUR:

_Madsen, C.J._

_González, J._

_Yu, J._

*Lakewood v. Willis*

No. 91827-9

STEPHENS, J. (concurring)—I agree with the lead opinion that the city of Lakewood's (City) antibegging ordinance is facially overbroad and Willis's conviction cannot stand. But I am concerned that the lead opinion truncates the constitutional overbreadth analysis by suggesting that only sections (1) and (2) of Lakewood Municipal Code (LMC) 9A.04.020A are invalid. The City charged Willis under the ordinance *as a whole,* comprising six subsections. And the City acknowledges that Willis's facial constitutional challenge concerns the entire ordinance. *See* Answer to Pet. for Review at 7 n.2 ("Before the Court of Appeals, Mr. Willis argued that he believed that his challenge was a facial challenge to the Code . . . ."); Resp't's Suppl. Br. at 2 ("Mr. Willis appears to be challenging the entirety of LMC 9A.[0]4.020A."); *see also* Opening Br. of Appellant at 7 (arguing that the ordinance is a content-based restriction on speech in a public forum and that

"[t]he majority of the areas listed in LMC 9A.[0]4.020A where speech is restricted are public places used as common thoroughfares"); Suppl. Br. of Pet'r at 17-18 (seeking invalidation of ordinance in its entirety).[1]

Because a facial overbreadth challenge under the First Amendment to the federal constitution and article I, section 5 of the Washington State Constitution is primarily concerned with the chilling effect of sweeping speech restrictions, we may not "sever" portions of statutes or ordinances prior to considering whether they make "'unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application.'" *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (quoting *City of Houston v. Hill*, 482 U.S. 451, 459, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987)); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) (stating test is whether overbreadth is real and substantial in relation to law's plainly legitimate sweep); *see generally* David H. Gans, *Strategic Facial Challenges*, 85 B.U. L. REV. 1333, 1342-45 (2005).[2] Indeed,

---

[1] The lead opinion correctly notes that the transcript of the colloquy on jury instructions shows that the parties agreed to limit the "to convict" instruction to the first two sections of LMC 9A.04.020A, though the jury instructions are not in the record. Willis attaches two jury instructions to his supplemental brief: while the first appears to be the referenced "[t]o convict" instruction, the second, definitional instruction defines "begging in a restrictive area" in terms of all six sections of the ordinance. Suppl. Br. of Pet'r Ex. 3. Regardless of how the jury was ultimately instructed, the parties agree that Willis was charged under the ordinance as a whole.

[2] While the lead opinion never uses the term "severance," the City does. The City relies on the severability clauses in its municipal code to argue that the court should determine only whether Willis was validly convicted for begging at the location where he was cited. *See* Resp't's Suppl. Br. at 2-3. Setting aside that the focus on the facts of Willis's conduct is misplaced in considering his *facial* challenge, any notion of severance should be rejected here. Severability may offer an appropriate remedy for constitutional

-2-

restricting our analysis of a facial overbreadth challenge to the "face" of one or two subsections of an ordinance effectively rewrites the ordinance, treating its subsections as if they were separate enactments. Moreover, it fundamentally changes the analysis of the law's chilling effect in relation to its permissible reach by foreclosing consideration of the full sweep of the law. Many overbroad speech restrictions might very well elude constitutional scrutiny based on the charging authority's decision to "let go" of particularly problematic subsections when challenged. I would analyze Willis's First Amendment challenge in relation to the facial overbreadth of LMC 9A.04.020A as written.

Examining the entire ordinance under which the City charged Willis, I conclude that LMC 9A.04.020A is facially overbroad. While the ordinance might conceivably have legitimate applications in nonpublic areas, on its face, it substantially restricts protected speech in a wide range of public forums traditionally open to First Amendment activity. And, on its face, it targets a particular category of protected speech, making it an unconstitutional content-based restriction under the United States Supreme Court's recent decision in *Reed v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). I would hold that LMC

violations in some contexts, but it is fundamentally at odds with the First Amendment overbreadth doctrine. *See* Gans, *supra*, at 1344 ("Courts may not leave in place sweeping speech restrictions because they have some valid applications, and may not rely on case-by-case adjudication and severability doctrine to narrow an overbroad law over time."). To eliminate the chilling effect of an overbroad law, we must declare it void as a whole and require the City to go back to the drafting table to craft a constitutionally permissible ordinance. *See id.* (noting this "creates a salutary incentive for legislatures to write narrow statutes when regulating free speech.").

*Lakewood v. Willis*, 91827-9 (Stephens, J. Concurrence)

9A.04.020A, as written, is facially overbroad and therefore invalid. I concur in the

decision to reverse Willis's conviction.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Lakewood v. Willis*, 91827-9 (Stephens, J. Concurrence)

Stephens, J.

Fairhurst, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Lakewood v. Willis (Robert)*

No. 91827-9

OWENS, J. (dissenting) — No one can argue against the virtues of free speech afforded us by the First Amendment to the federal constitution. However, that freedom is not without reasonable limitations on locations not intended for speech. The traffic lane of the freeway ramp in this case is one such location subject to reasonable restrictions on speech because it is inarguable that it was designed for vehicles, not pedestrians. Since I cannot agree that the First Amendment should stand in the way of a city's ability to regulate traffic lanes for the safety of both its drivers and pedestrians, I must respectfully dissent.

ANALYSIS

The United States Supreme Court has instructed that the Constitution does not require speech to be free from regulation "in all places and at all times." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985). Since the strictness of judicial scrutiny of speech regulation depends on the category of the location in question, the key to free speech analysis is

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

conducting a forum analysis to determine whether the location is a "public forum" or a "nonpublic forum." *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 49, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983).

To determine whether a forum is public or nonpublic, we turn to United States Supreme Court precedent and our own. The United States Supreme Court has routinely held that streets, sidewalks, and parks are traditional public forums. *Id.* at 45. Such locations "'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id.* (quoting *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515, 59 S. Ct. 954, 963, 83 L. Ed. 1423 (1939)). In addition, we have noted that another consideration is that "'a traditional public forum is property that has as a principal purpose . . . [of] the free exchange of ideas.'" *Sanders v. City of Seattle*, 160 Wn.2d 198, 209, 156 P.3d 874 (2007) (internal quotation marks omitted) (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679, 112 S. Ct. 2701, 120 L. Ed. 2d 541 (1992)). If a forum cannot be classified as either a traditional or a designated public forum (that the State has opened for public expression), it is a nonpublic forum. *See Perry*, 460 U.S. at 46. Here, the lead opinion largely forgoes a thorough forum analysis based on these principles, and instead approaches it with a general conclusion that since "there are sidewalks 'at' many freeway ramps and major intersections in Lakewood," the

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ordinance covers public forums. Lead opinion at 13. As such, the lead opinion analyzes the ordinance under the overbreadth doctrine. I disagree with this approach.

The lead opinion views Willis' petition as presenting a facial challenge to Lakewood Municipal Code (LMC) 9A.04.020A, a claim that is simply not explicitly articulated in the briefing either to our court or to any of the courts below that considered the constitutionality of the ordinance. Willis raised a vagueness claim to the Court of Appeals, but he did not raise a facial challenge or make any arguments based on the amply available overbreadth doctrine either to this court or to the Court of Appeals below. Furthermore, we simply do not have sufficient facts before us about the various locations covered by the ordinance to consider this as a facial challenge. As such, I do not view Willis' arguments as a facial challenge.

Where a facial challenge is not appropriate, courts will consider the statute's specific application to the party. *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). When analyzing a facial challenge to a statute on First Amendment grounds, courts analyze the language of the ordinance itself and facts are not essential. *City of Seattle v. Webster*, 115 Wn.2d 635, 640, 802 P.2d 1333 (1990). In contrast, when considering an as-applied challenge, courts analyze the specific circumstances of the ordinance's application to the particular conduct of the party. Since Willis raised the challenge as it was applied to his conduct, we should consider the constitutionality of

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the ordinance as he did. Our analysis should center on a review of the record before us regarding Willis' behavior and use that to conduct a forum analysis. Even Willis himself conducted a forum analysis regarding the specific location at which he was cited for begging, which indicates that he thought he was raising an as-applied challenge. *See* Opening Br. of Appellant at 8; Pet. for Review at 7 ("In this case, the ordinance is regulating speech in a public forum because the N/B I-5 [northbound Interstate 5] exit to Gravelly Lake Drive SW [Southwest] is accessible by everyone and is a public thoroughfare.").

The record regarding Willis' location is very sparse in this case, most likely because Willis did not raise a First Amendment challenge at trial, so few relevant facts were developed. We know very little about the particular freeway ramp and abutting intersection at Gravelly Lake Drive because the parties did not supply us with those details. However, we have one key piece of evidence regarding Willis' location—Officer Jeremy Vahle testified that Willis walked "from the shoulder, across the fog line out to a car" such that he was standing "actually in the lane of travel." Clerk's Papers at 56-57. Thus, we know that he stood in the roadway on the off-ramp. With these facts, we must engage in a forum analysis to determine whether LMC 9A.04.020A was constitutionally applied to Willis.

Since Willis was cited for entering the lane of traffic, that is the forum at issue here. That forum is plainly not a public forum. Willis hangs his hat on his claim that

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

because this intersection has a sidewalk, it is a public forum. I agree that most sidewalks are traditional public forum, particularly where they allow pedestrian access and can serve as a location for free expression. However, Willis takes this principle a step further and contends that the roadway itself—on the freeway ramp—is also a public forum simply because some forms of speech are allowable. Wash. Supreme Court oral argument, *City of Lakewood v. Willis*, No. 91827-9 (Feb. 16, 2016), at 7 min., 43 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. I cannot agree with this contention. Freeway off-ramps are simply not public forums designed for pedestrian traffic and free expression, and case law supports this.

Courts around the country have held that appendages of freeways like the off-ramp here are nonpublic forums. For instance, in *Jacobsen v. Bonine*, 123 F.3d 1273-74, (9th Cir. 1997), the court reasoned that walkways at rest stops are nonpublic forums because they are not accessible to general pedestrian traffic, but only to drivers along the highways. This reasoning does not support Willis' argument, as the lead opinion contends, because highway rest stops are akin to highway off-ramps in that they are not accessible to general pedestrian traffic. A freeway ramp is merely an extension of a freeway. It is meant to facilitate vehicle travel and not pedestrian travel, making it an improper location for communication and assembly: vehicles

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Lakewood v. Willis (Robert)*
No. 91827-9
Owens, J., Dissenting

exiting a highway are decelerating from high speeds, and vehicles entering a highway are accelerating to high speeds.

Furthermore, we cannot ignore our own case law, which instructs us to look to the primary purpose of the forum. We have recently analyzed two forums not unlike the instant forum, as they involved an analysis of forums involving sidewalks. We found that utility poles on sidewalks and a walkway to a monorail station platform through a shopping center were both nonpublic forums. *City of Seattle v. Mighty Movers, Inc.*, 152 Wn.2d 343, 359-60, 96 P.3d 979 (2004); *Sanders*, 160 Wn.2d at 219-20. In *Mighty Movers*, we reasoned that in spite of their location on sidewalks, utility poles do not have the characteristics of a public forum. 152 Wn.2d at 360. Pointing to a United States Supreme Court case that also considered the forum categorization of utility poles, we stated that utility poles did not have the "traditional right of access" associated with them "comparable to the right of access to public streets and parks." *Id.* at 355 (quoting *Vincent*, 466 U.S. at 814). In *Sanders*, we held that a public easement providing pedestrian access to a monorail platform was a nonpublic forum. 160 Wn.2d at 220. We reasoned that it was not like a sidewalk because the easement had "not historically served as a public thoroughfare." *Id.* at 219. Importantly, *Sanders* looked at whether a principal use of the property was the "free exchange of ideas." *Id.* at 213-15. We found that the purpose and function of

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the walkway was to provide pedestrian access to the monorail platform, not for the free exchange of ideas. *Id.* at 215.

We should follow our own precedent regarding the nature of the forum here. The freeway ramp here is similar to the utility pole in *Mighty Movers* and the walkway to the monorail station in *Sanders*. Both could be said to be akin to sidewalks, and yet we found both to be nonpublic forums. Like the utility pole in *Mighty Movers* that did not have a traditional use rooted in expression, freeway ramps likewise are not rooted in a traditional use of free expression because they are unsafe for pedestrians due to the high speed at which cars travel. Like in *Sanders*, where we said a walkway was a nonpublic forum because it was not historically a thoroughfare, freeway ramps certainly do not historically allow pedestrian access. In employing the "principal purpose" analysis, we must consider the purpose of a freeway ramp and intersection. The principal purpose of the freeway ramps is to transport vehicles on and off of the state highway transportation system. I cannot find that a principal purpose of a freeway ramp is the free exchange of ideas because, rather, it is the free exchange of vehicle traffic.

Consequently, I would conclude that Willis was in a nonpublic forum when cited. As the lead opinion noted, a restriction on speech in a nonpublic forum need only be viewpoint neutral and reasonable in light of the purpose of the forum. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510,

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Lakewood v. Willis (Robert)*
No. 91827-9
Owens, J., Dissenting

132 L. Ed. 2d 700 (1995). I would hold that LMC 9A.04.020A meets both requirements because the ordinance takes no position on begging as expressing a viewpoint and because it is reasonable for the city to restrict pedestrians from standing on a freeway ramp in order to maintain safety. Since cities may reasonably regulate speech in nonpublic forums and have done so here, I would affirm the courts below in finding that the ordinance was constitutionally applied to Willis. I respectfully dissent.

## CONCLUSION

The lead opinion holds that the ordinance is overbroad because it regulates areas that are traditional public forums. The record is clear that Willis was standing in the traffic lane of a freeway off-ramp when he was cited under this ordinance. I would hold that the particular location at issue is a nonpublic forum since it is decidedly unsafe for pedestrians. Thus, as applied to Willis, the ordinance permissibly regulates speech. Therefore, I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*City of Lakewood v. Willis (Robert)*
No. 91827-9
Owens, J., Dissenting

_____
Owens, J.

Johnson, J.

Wiggins, J.

9