**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

L. F., in his individual capacity and
as parent of K.S.F (Student 1) and
K.S.F. (Student 2); K. S. F.,
Student 1; K. S. F., Student 2,
           *Plaintiffs-Appellants*,

v.

LAKE WASHINGTON SCHOOL
DISTRICT #414,
           *Defendant-Appellee.*

No. 18-35792

D.C. No.
2:17-cv-00375-
TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted November 6, 2019
Seattle, Washington

Filed January 17, 2020

Before: Ronald M. Gould and Jacqueline H. Nguyen,
Circuit Judges, and Gregory A. Presnell,[*] District Judge.

Opinion by Judge Presnell

---

[*] The Honorable Gregory A. Presnell, United States District Judge
for the Middle District of Florida, sitting by designation.

## SUMMARY**

### Civil Rights

The panel affirmed the district court's summary judgment in favor of Lake Washington School District in an action brought by a parent who alleged that the District violated his First Amendment rights by imposing a "Communication Plan," which limited his communications with School District employees regarding his daughters' education.

The panel first rejected plaintiff's contention that the district court failed to apply the proper standard at summary judgment.  The panel stated that a district court's obligation at the summary judgment stage to view the evidence in the light most favorable to the non-movant does not require that it ignore undisputed evidence produced by the movant.

The panel held that the School District did not violate plaintiff's First Amendment rights by requiring him to communicate only with particular staff members or do so only at a specified time and place.  The panel noted that members of the public do not have a constitutional right to force the government to listen to their views, and the First Amendment does not compel the government to respond to speech directed toward it.

The panel held that even assuming that the Communication Plan restricted plaintiff's speech, it agreed

---

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

with the district court that the Plan did not violate plaintiff's First Amendment rights. The panel held that the classrooms and other government property at issue in this case must be considered non-public fora, and that the Communication Plan was a reasonable effort to manage a parent's relentless and unproductive communications with School District staff.

## COUNSEL

Shannon McMinimee (argued), Laura Hruska, and Michelle Mentzer, Cedar Law, Seattle, Washington, for Plaintiffs-Appellants.

Taki V. Flevaris (argued), Carlos A. Chavez, and Sarah C. Johnson, Pacifica Law Group LLP, Seattle, Washington, for Defendant-Appellee.

## OPINION

PRESNELL, District Judge:

L.F. is the divorced father of two daughters who, at all relevant times, attended school within the Lake Washington School District (the "District"). After a series of contentious interactions, the District imposed a "Communication Plan," which set limits on communications between L.F. and District employees regarding his daughters' education. L.F. sued, alleging *inter alia* that the Communication Plan infringed on his First Amendment rights. The district court granted summary judgment to the District on that claim on the grounds that the Communication Plan did not burden L.F.'s speech or, alternatively, that the Communication Plan

was a reasonable time, place, and manner restriction.  This appeal followed.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.   Background

L.F. contends that his daughters suffer from anxiety and behavioral disorders that adversely affect their educational performance.  He has had a number of disagreements with District personnel regarding (1) the best ways to address these issues and (2) what he sees as discrimination against him as a divorced father.

For its part, the District contends that, beginning in March 2015, L.F. engaged in a pattern of "sen[ding] incessant emails to staff accusing them of wrongdoing; ma[king] presumptuous demands; level[ing] demeaning insults; … and in face-to-face interactions, act[ing] in an aggressive, hostile, and intimidating manner."  District employees complained that L.F.'s extraordinarily time-consuming communications made District staff feel threatened and intimidated.

In early November 2015, L.F. attended a meeting with a "guidance team" of District employees to evaluate whether one of his daughters would benefit from a plan under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, to accommodate her anxiety.  L.F. had advocated for such a plan; his daughter and ex-wife argued that no such plan was needed.  After the meeting, the guidance team concluded that an accommodation plan was not necessary.

On November 10, 2015, L.F. was informed of the guidance team's decision by his daughter's principal, Robert

Johnson.  L.F. vehemently disagreed with the decision, and he repeatedly communicated his disagreement to District employees via email.  He replied to Johnson that "[i]t is clear you have failed to properly consider the very excessive length of time [his daughter] has taken to complete homework, plus the panic attack [she] suffered at the bus stop, and other matters."  He also stated he wished to appeal the decision.  In an email two days later, he informed Johnson that he was "very concerned regarding clear, deliberate omissions of evidence" by the guidance team and requested "an urgent meeting" with Johnson and his superior due to L.F.'s belief that "this is likely a case of discrimination by the school against [him]."  That same day, he asked his daughter's guidance counselor to "initiate the appeals process immediately" regarding the Section 504 plan decision.  He also told her he had "serious concerns" regarding Johnson's "impartiality and competence" and asked that she "take that into consideration as [she] decide[s] on who should appropriately be involved."[1]  Johnson described the number of communications L.F. demanded regarding this and other issues as "many times more than is typical."

On November 23, 2015, citing "the unproductive communication pattern that has developed" and "the tone and manner of some of [L.F.'s] communication and interaction with District staff and administrators, [which] has regrettably made several of these individuals feel intimidated and bullied," the District imposed the Communication Plan.  The terms of the plan were spelled out in an email to L.F. from Sue Anne Sullivan, a District administrator.   Under the plan, L.F.'s substantive communications with the District about his daughters'

---

[1] Ultimately, L.F. opted not to appeal the Section 504 plan decision.

education would be limited to bi-weekly, in-person meetings with Sullivan and another administrator.  L.F. was advised not to "email or attempt to communicate (in any form) with any District employees" aside from the bi-weekly meetings, "as they will not respond to [his] emails or attempts to communicate."

The Communication Plan's restrictions did not apply in the event of an emergency, did not affect L.F.'s right to appeal the decision regarding the Section 504 plan, and did not bar him from attending school activities or accessing school records.  L.F. was told that he had a right to challenge the Communication Plan by filing an appeal in state court.[2]

Sullivan asked the principals at the schools attended by L.F.'s daughters to send an email to staff members who worked directly with the girls.  The email, which contained language drafted by Sullivan, included the following:

> The communication plan prohibits [L.F.] from having any further direct communication or contact with any District administrators or staff.  As of this date and time, all of [L.F.]'s communication with the District shall occur at biweekly meetings with Directors of School Support Sue Anne Sullivan and Matt Livingston.  Just to be clear, [L.F.] has been specifically directed by the District not to contact any of his students' teachers, school staff or administrators.

The email also explained other details of the Communication Plan, including that it did not apply in the event of an

---

[2] L.F. did not file such an appeal.

emergency and did not prevent L.F. from attending normal parent activities on campus.

L.F. followed the requirements of the Communication Plan for a few weeks after its imposition. However, the District determined that he violated the terms of the plan at a January 2016 meeting with his daughter's math teacher and Johnson. The District had approved the meeting based on L.F.'s request for a parent-teacher conference regarding his daughter's performance in math. After the math discussion concluded, L.F. produced printouts about his daughter's grades in other subject areas and, according to Johnson, spent ten minutes discussing topics with him that had been discussed at the Section 504 plan meeting in November. Around this same time, the District also found that L.F. had violated the plan by directly contacting staff members at his other daughter's school. As a result of these findings, the District further restricted the meetings between L.F. and District administrators, cutting back from bi-weekly to once a month. Over the succeeding months, L.F. made requests that the District lift or modify the Communication Plan, but the District refused to do so.

In March 2017, L.F. filed the instant suit. He asserted three claims: a claim under 42 U.S.C. § 1983 that the Communication Plan violated his First Amendment rights; a retaliation claim pursuant to Section 504 of the Rehabilitation Act; and a claim that the District had discriminated against him in violation of the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.010 et seq.

The parties filed cross-motions for summary judgment. In July 2018, the district court granted the District's motion, dismissing all of L.F.'s claims with prejudice. As to the § 1983 claim, the district court found that the

Communication Plan, rather than restricting L.F.'s speech, instead regulated which types of communication District staff would respond to, and therefore it did not violate L.F.'s First Amendment rights. In the alternative, assuming that the Communication Plan did restrict L.F.'s speech, the district court found that the Communication Plan did not violate the First Amendment because it was a reasonable, viewpoint-neutral restriction in a non-public forum. L.F. appeals only the decision regarding his § 1983 claim.

## II. Standard of Review

A grant of summary judgment is reviewed de novo. *Sandoval v. County of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018). "We determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002) (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001)).

## III.    Discussion

L.F. contends that the district court erred by failing to apply the proper standard at summary judgment and by concluding that the Communication Plan did not burden his speech. We will address these arguments in turn.

### A. Summary Judgment

L.F. contends that the district court viewed the relevant evidence in the light most favorable to the District when reviewing the District's motion for summary judgment. He bases this argument on the fact that the "Background" section of the district court opinion included numerous facts

drawn from declarations provided by District employees.**[3]** But a court's obligation at the summary judgment stage to view the evidence in the light most favorable to the non-movant does not require that it ignore undisputed evidence produced by the movant. *See, e.g.*, *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (concluding that the district court was obligated to review evidence submitted by the plaintiffs in support of their own motion for summary judgment before ruling on the defendants' motions for summary judgment).

L.F. also contends that the district court failed to consider three items in the proper light at the summary judgment stage: the portion of Sullivan's email (quoted above) stating that the Communication Plan "prohibits [L.F.] from having any further direct communication or contact with any District administrators or staff"; the District's decision to reduce the meeting frequency from bi-weekly to monthly after L.F. attempted to engage the principal in an unauthorized conversation**[4]**; and his contention that the Communication Plan itself sought to regulate his speech because of an "unproductive communication pattern" between L.F. and District employees. Taken in context,

---

**[3]** L.F. does not argue that any of the facts included in the Background section were disputed.

**[4]** There is no evidence that the principal "allowed" this conversation, as L.F. asserts – only that L.F. attempted to speak with the principal about topics that the District had not agreed to discuss in that forum and that this attempt lasted approximately ten minutes. Although L.F. says his ability to communicate with the District was reduced to one email per month as a result of his ten-minute discussion with his child's principal, this is also not correct. The District only decided to stop meeting in person with L.F. months later after he continued a "pattern of extremely negative, intimidating, argumentative and threatening communication."

however, these facts do not give rise to a genuine issue of material fact. The Communication Plan on its face restricts only the District's speech and asks – but does not require – L.F. to honor it. Sullivan's statement to District employees that the Communication Plan "prohibits [L.F.] from having any further direct communication or contact" with them was an internal communication that could not have been perceived by L.F. as a restriction on his ability to speak. And the Communication Plan's purpose of cultivating more productive exchanges with L.F. and the District supports an inference that the District was *encouraging* communication from L.F., not chilling it.

## B.  First Amendment

The First Amendment of the United States Constitution provides in relevant part that "Congress shall make no law … abridging the freedom of speech … or the right of the people … to petition the Government for a redress of grievances." It is applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996).

L.F. contends that the Communication Plan violated his First Amendment rights by prohibiting him from communicating with his children's teachers and by precluding him from challenging District decisions.[5] Factually, this is an overstatement. The Communication Plan did not entirely prohibit such communication or such

---

[5] The Communication Plan only applied to communications between L.F. and District employees. It had no effect on L.F.'s ability to communicate with, for example, other government entities or the media.

challenges; rather, it limited L.F. to specified channels – the bi-weekly meetings – for any communications to which he wanted a response.

In any event, the District was within its rights to impose such a limitation.  Members of the public do not have a constitutional right to force the government to listen to their views.  *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 283 (1984).  And the First Amendment does not compel the government to respond to speech directed toward it.  *See, e.g.*, *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979) (per curiam) ("The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so.  But the First Amendment does not impose any affirmative obligation on the government to listen, [or] to respond . . . ." (citations omitted)).  Because government entities such as the District do not have to listen to parents' views, it is not a constitutional violation to require that parents, if they wish to be heard, communicate only with particular staff members or do so only at a specified time and place.  And because the government is under no constitutional obligation to respond to such views, there is no violation where a government entity such as the District ignores (or threatens to ignore) communications from outside the specified channels.

L.F. argues that the District went beyond simply regulating the speech to which it would respond.  He points out that the terms of the Communication Plan set limits on the amount of communication he could have with District employees and threatened him with sanctions if he exceeded those limits.  But the plan only set a limit on the amount of communications *to which the District would respond*.  The only so-called "sanction" set forth in the plan for unapproved

communications was that District employees "[would] not respond to [L.F.'s] emails or attempts to communicate."[6]  In short, the Communication Plan regulated the District's conduct, not L.F.'s.  Therefore, it did not violate L.F.'s First Amendment rights.

And even assuming that the Communication Plan restricted L.F.'s speech, we agree with the district court that it did not violate his First Amendment rights.  Regulation of speech on government property that has traditionally been available for public expression or has been designated as a public forum is subject to the highest scrutiny, but limitations on expressive activity on other types of public property – so-called "non-public fora" – are subject to much more limited review.  *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678–79 (1992).  The property at issue here falls into the latter category.

School facilities may be deemed to be forums for public expression "only if school authorities have by policy or by practice opened those facilities for indiscriminate use by the general public or by some segment of the public, such as student organizations."  *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (internal quotation marks and citations omitted).  There is no evidence that any District property has been opened to this sort of indiscriminate use.

---

[6] In the email establishing the Communication Plan, Sullivan also informed L.F. that if he ignored its terms the District could seek an antiharassment order, which "would formally prohibit [him] from having any contact with District staff or administrators."  L.F. does not argue that the threatened imposition of such a court order violated his First Amendment rights.

Accordingly, the classrooms and other government property at issue here must be considered non-public fora.**[7]**

Regulation of expressive activity in non-public fora need only be reasonable, so long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view. *Int'l Soc'y for Krishna Consciousness, Inc.,* 505 U.S. at 679. L.F. does not explain how the Communication Plan imposed unreasonable restrictions on his ability to share his concerns about his daughters' educational needs or any other topic. And as the District Court pointed out, the Communication Plan addressed the manner in which L.F. communicated with the District – not the content of his speech or any viewpoints he wished to convey. We agree with the trial court that the Communication Plan was a reasonable effort to manage a parent's relentless and unproductive communications with District staff. As such, it did not violate L.F.'s First Amendment rights even if it restricted his speech.

**AFFIRMED.**

---

**[7]** L.F. contends that the District's email system should be considered a designated public forum because the District uses the system as its primary method of contact with the public rather than just for communication between teachers and District staff. But access alone is not enough to transform public property into a public forum. *Greer v. Spock*, 424 U.S. 828, 836 (1976) (holding that public's ability to freely visit property owned or operated by the Government does not turn that property into a public forum for purposes of the First Amendment). Traditional public fora are those places, such as public streets and parks, which "by long tradition or by government fiat have been devoted to assembly and debate." *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). L.F. has not produced any evidence that the general public uses (or has been authorized to use) the District's email system for such purposes.