NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 23 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RELMAN COLFAX PLLC, | No. 21-55458 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-08612-PSG-JC |
| v. | |
| FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY; MEI LING, | MEMORANDUM* |
| Defendants-Appellees, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Movant. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted April 13, 2022
Pasadena, California

Before: CALLAHAN and VANDYKE, Circuit Judges, and ARTERTON,**
District Judge.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Janet Bond Arterton, United States District Judge for the District of Connecticut, sitting by designation.

Plaintiff-Appellant Relman Colfax PLLC ("Relman") appeals three decisions by the district court: the grant of Defendant-Appellee Fair Housing Council's (the "FHC") motion for summary judgment against Relman, the denial in part of Relman's motion for summary judgment against Defendant-Appellee Mei Ling, and the denial in part of Relman's motion for a default judgment against Ms. Ling. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

A district court's grant of summary judgment is reviewed de novo. *L.F. v. Lake Wash. Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020). "We determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (quoting *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002)). We review a district court's decision under Rule 37 for abuse of discretion, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002), and do not reverse "absent a definite and firm conviction that the district court made a clear error of judgment," *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (quoting *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 379 (9th Cir. 1988)). An error of law amounts to an abuse of discretion. *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 808 (9th Cir. 2019).

Relman represented the FHC and Ms. Ling in a case brought under the False

Claims Act. The FHC and Ms. Ling each executed a retainer agreement with Relman, which contained the following identical fee provision:

1. Attorneys' Fees

In the event relief is obtained, the Client agrees that the Firm is entitled to its reasonable attorneys' fees, in addition to the costs described below. The Firm's fees shall be calculated as follows:

A. If the Litigation is resolved by a lump sum settlement or offer of judgment that provides for a monetary award to the Client but makes no separate provision for fees and waives the Client's right to seek court-awarded fees, the Firm shall be entitled to one-third (33 1/3%) of the monetary award, in addition to costs, or the Firm's actual fees and costs (calculated in the manner described below), whichever is greater.

B. If the Litigation is resolved by summary judgment or a trial at which the Client prevails, the Firm shall be entitled to one-third (33 1/3%) of the monetary amount awarded to the Client in the court proceeding, in addition to costs, or the court's award of statutory fees and costs, whichever is greater. The Firm will ask the court to award attorneys' fees and costs, to be paid by the Defendants. If the amount awarded by the court is less than one-third of the monetary amount awarded by order or judgment, the Client shall be responsible for paying the Firm the difference between the court-awarded fees and one-third of the monetary award to the Client.

C. The Firm's attorneys' fees will be calculated utilizing the "lodestar" method. The "lodestar" amount reflects the number of hours worked multiplied by a reasonable hourly rate for the work performed. Charges for lawyers and legal assistants will be at our regular hourly rates in effect when the services are paid. Currently, the Firm's hourly rates range from $725 for senior lawyers to $275 for junior associates, and from $140 to $175 for legal assistants and interns. The rates for particular individuals are adjusted from time to time, usually as of January 1.

D. If the Litigation is resolved in a manner in which the Client does not prevail, the Client will not be responsible for any fees incurred

3

by the Firm and will be responsible only for the costs of the Litigation to the extent set forth herein.

## I.     Relman's Fees under the Agreement

Relman requested a declaratory judgment on the attorneys' fees it was entitled to under the Agreement if the underlying False Claims Act case ended with a settlement which did not waive the FHC's or Ms. Ling's right to seek court-awarded fees. The district court correctly determined that in such a situation, the Agreement provided for fees in ¶ 1.C. The Agreement states that Relman's "reasonable attorneys' fees . . . shall be calculated as follows," and lists four methods of calculating attorneys' fees. Three paragraphs contain conditional language which does not apply to a settlement that does not waive the FHC's or Ms. Ling's right to seek court-awarded fees. Therefore, where the conditions in ¶¶ 1.A, 1.B, and 1.D are not triggered, Relman's fees are unambiguously provided for in ¶ 1.C. *See Aziken v. District of Columbia*, 70 A.3d 213, 218–19 (D.C. 2013) ("[T]he written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite meaning.") (quoting *Hartford Fin. Servs. Grp. v. Hand*, 30 A.3d 180, 187 n.12 (D.C. 2011)).

Relman presents several arguments against this interpretation, all of which are without merit. First, it asserts that this interpretation defies the text and structure of the Agreement. Paragraph 1.A allows Relman to recover one-third of its clients'

recovery or Relman's "actual fees and costs (calculated in the manner described below)," and Relman asserts that ¶ 1.C is nothing more than a technical provision interpretating ¶ 1.A. Considering the introductory language of the Agreement providing for fees "as follows," however, ¶ 1.C is not merely a technical provision but also an independent method for calculating fees. *See Steele Founds., Inc. v. Clark Constr. Grp., Inc.*, 937 A.2d 148, 154 (D.C. 2007) ("Contractual provisions are interpreted taking into account the contract as a whole, so as to give effect, if possible, to all of the provisions in the contract."). Further, while ¶ 1.C does not begin with language emblematic of a "catch-all provision," or introductory language similar to ¶¶ 1.A, 1.B, or 1.D, such language is not necessary to support our conclusion given the terms and structure of the Agreement. *See Aziken*, 70 A.3d at 218–19.

Relman also claims that this interpretation defies what a "reasonable person in the position of the parties would have thought the disputed language meant," *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984); *see Indep. Mgmt. Co., Inc. v. Anderson & Summers, LLC*, 874 A.2d 862, 869 (D.C. 2005), because a reasonable person "would surely have understood that contingency fee agreements are customary in False Claims Act litigation." While a one-third contingency fee may be customary in False Claims Act cases, the parties contracted otherwise by including a paragraph which allows attorneys' fees to be calculated

through the "lodestar" method in ¶ 1.C. *See 1010 Potomac Assocs.*, 485 A.2d at 205 ("If the document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent."). And although Relman asserts that this interpretation is a poor fit to the Agreement which potentially overwrites its contingency fee, that result is a product of its terms; if Relman was truly entitled to a one-third recovery in any situation, the Agreement would simply state that Relman was entitled to the greater of one-third of the FHC's or Ms. Ling's recovery, or its actual costs and fees.

Finally, Relman maintains that the district court improperly construed the Agreement against the drafter. *See 1901 Wyo. Ave. Coop. Ass'n v. Lee*, 345 A.2d 456, 463 (D.C. 1975) (construction against the drafter applies after the ordinary rules of construction have been applied and the agreement is still ambiguous). Because we independently conclude that the Agreement unambiguously provides for Relman's attorneys' fees in ¶ 1.C without such a construction, we do not address this assertion.[1]

---

[1] We also do not address Relman's arguments that the Agreement contains a gap or is ambiguous because we find the contract to provide for attorneys' fees in ¶ 1.C.

## II. Relman's Entitlement to Ms. Ling's Recovery

Relman additionally claims that it is specifically entitled to at least one-third of Ms. Ling's recovery for two reasons. First, it asserts that the district court erred in failing to properly consider that ¶ 1.A applied to Ms. Ling's settlement because Ms. Ling refuses to allow Relman to petition for court-awarded fees. This refusal, it asserts, amounts to a waiver of her right to seek court-awarded fees, triggering ¶ 1.A. Paragraph 1.A, however, provides for a one-third contingency fee if "a lump sum settlement or offer of judgment . . . waives the Client's right to seek court-awarded fees." Under the terms of the Agreement, Relman is only entitled to one-third of Ms. Ling's recovery if the settlement itself waives Ms. Ling's right to seek court-awarded fees, and thus, the district court did not err. *See Aziken*, 70 A.3d at 218–19.

Second, Relman claims that the district court abused its discretion when it refused to order a declaration that Ms. Ling was required to pay Relman one-third of her recovery as a Rule 37 sanction for her discovery misconduct. After denying in part Relman's motion for summary judgment against Ms. Ling, the district court concluded that Rule 37 sanctions were "appropriate and warranted," entered a default judgment against Ms. Ling, and ordered $94,338.30 in attorneys' fees to be paid of out her eventual recovery. But the district court concluded that it "c[ould] not" award Relman a declaratory judgment entitling it to one-third of Ms. Ling's eventual recovery based upon the Agreement because it would be "inconsistent with

the Court's prior holdings." Relman claims this was an error because Rule 37 discovery sanctions "are not concerned with the underlying merits of the litigation." *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993) ("[T]he probable merit of a litigant's case does not preclude the imposition of a default judgment sanction against that litigant.").

The district court did not err in refusing to award a declaratory judgment that would be inconsistent with its prior rulings on summary judgment. While "the *probable* merit of a litigant's case" may not thwart a default judgment sanction, *Malautea*, 987 F.2d at 1544 (emphasis added), the district court considered only its prior rulings and settled interpretation of the Agreement. We do not find this to be an error of law or abuse of discretion.[2]

The district court is **AFFIRMED**.

---

[2] The FHC and Ms. Ling each filed requests for judicial notice asking us to take notice of materials filed in this and another lawsuit. Because the reasoning underlying our holding here does not rely on the material attached to those requests, we deny the requests as moot (setting aside the question of whether there is any need to seek judicial notice of documents filed earlier in this case).