IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TEN INJURED WORKERS,<br><br>                      Respondents,<br>      v.<br><br>THE STATE OF WASHINGTON; JOEL SACKS, in his official capacity as Director for the Department of Labor and Industries; and ROBERT W. FERGUSON, in his official capacity as Attorney General for the State of Washington,<br><br>                  Appellants. | No. 85997-8-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

SMITH, C.J. — "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." Packingham v. North Carolina, 582 U.S. 98, 104, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017). That fundamental principal is central to this case.

In 2023, the legislature amended RCW 51.36.070 to allow injured workers to audio and video record their independent medical examinations (IMEs). However, subsection (4)(g) of the statute forbids workers from posting a recorded IME to social media. Ten injured workers sued the State of Washington, the director of the Department of Labor and Industries, and the state attorney general[1] under the Uniform Declaratory Judgments Act, ch. 7.24 RCW,

---

[1] These parties are collectively referred to as "the State" on appeal.

challenging the constitutionality of the subsection and arguing that it is a prior restraint on speech. The trial court agreed and granted summary judgment in the workers' favor. The State appealed, contending that the restriction is a permissible time, place, or manner restriction. Because the statute forecloses workers' access to social media, we conclude that the statute is an unconstitutional prior restraint and affirm.

## FACTS

Under the Industrial Insurance Act, Title 51 RCW, workers who sustain injuries in the course of their employment are entitled to compensation. RCW 51.32.010. To evaluate whether a worker is entitled to compensation, the Department of Labor and Industries (the Department) requires workers to first submit to an IME. RCW 51.36.070. An IME is "[a]n objective medical-legal examination requested (by the department or self-insurer) to establish medical findings, opinions, and conclusions about a worker's physical condition." WAC 296-23-302. These examinations "may only be conducted by department-approved examiners." WAC 296-23-302.

In 2023, the legislature amended the statute governing IMEs to allow workers to record their examinations, subject to certain limitations. LAWS OF 2023, ch. 166, § 4. Relevant here, the newly amended statute prohibits workers from posting the recorded examination to social media. RCW 51.36.070(4)(g). Workers can be fined up to $1,000 for posting a recording to social media. RCW 51.48.080.

Shortly after the newly amended statute took effect, ten injured workers (the Workers) sued the State of Washington, the Director for the Department of Labor, and the state attorney general to enjoin application of the statute under the Uniform Declaratory Judgments Act. In response, the State moved for summary judgment, arguing that the statute regulated conduct and, therefore, that free speech principles did not apply. In the alternative, the State asserted that the social media provision was a permissible time, place, and manner restriction. The trial court disagreed, concluded that the social media provision was an unconstitutional prior restraint on speech, and denied the State's motion for summary judgment. The court also permanently enjoined the State from enforcing RCW 51.36.070(4)(g) against injured workers who post recordings of their IMEs to social media and stayed the permanent injunction pending review by our state Supreme Court.

The State appeals.

ANALYSIS

Whether RCW 51.36.070(4)(g)'s prohibition on posting a recorded IME to social media is an unconstitutional restraint on speech presents a matter of first impression. The State contends that the prohibition is a valid time, place, and manner restriction because the Internet is a "place," the statute is narrowly tailored to achieve a compelling state interest, and because workers are free to discuss or share their recorded IMEs elsewhere. The Workers contend that the statute is an unconstitutional prior restraint because it forecloses a worker's access to social media altogether.

3

But these arguments fail to address a necessary threshold inquiry: whether posting a recorded IME to social media is conduct or speech for First Amendment purposes. In order to reach what kind of restriction RCW 51.36.070(4)(g) prescribes, we must first determine whether the statute implicates free speech principles at all. We conclude that it does.

Standard of Review

We review a summary judgment order de novo. Borton & Sons, Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court and consider all the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

We also review the constitutionality of a statute de novo. State v. Watson, 160 Wn.2d 1, 5, 154 P.3d 909 (2007). " '[A] statute is presumed to be constitutional, and the party challenging its constitutionality bears the burden of proving its unconstitutionality beyond a reasonable doubt.' " Voters Educ. Comm. v. Wash. Pub. Disclosure Comm'n, 161 Wn.2d 470, 481, 166 P.3d 1174 (2007) (quoting State v. Hughes, 154 Wn.2d 118, 132, 110 P.3d 192 (2005)). But in the context of free speech, the burden shifts and "[t]he State bears the burden of justifying a restriction on speech." Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 114, 937 P.2d 154 (1997).

Whether RCW 51.36.070(4)(g) Implicates Free Speech

The right to free speech is protected by both our state constitution and the federal constitution. WASH. CONST. art. I, § 5; U.S. CONST. amend. I. Article I, section 5 of our state constitution provides that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." Likewise, the First Amendment, which applies to the states through the due process clause of the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. 1.

Although both article I, section 5 of our state constitution and the First Amendment to the federal constitution forbid restrictions on speech, courts have long recognized that such protections "do[] not end at the spoken or written word." See Texas v. Johnson, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) (explaining that the First Amendment may protect expressive conduct); State v. Immelt, 173 Wn.2d 1, 6-7, 267 P.3d 305 (2011) (noting that conduct may be constitutionally protected). Conduct may be protected speech if it is " 'sufficiently imbued with elements of communication.' " First Covenant Church of Seattle v. City of Seattle, 120 Wn.2d 203, 216, 840 P.2d 174 (1992) (quoting Spence v. Washington, 418 U.S. 405, 409, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974)). But pure conduct is not protected. O'Day v. King County, 109 Wn.2d 796, 802, 749 P.2d 142 (1988). Further, the United States Supreme Court has rejected the notion that *any* conduct may qualify as speech if the actor intends to express or communicate an idea. United States v. O'Brien, 391 U.S. 367, 376, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968).

5

To determine whether conduct constitutes protected speech, we examine whether (1) the person intended "to convey a particularized message," and (2) whether "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." Spence, 418 U.S. at 410-11. At the heart of this inquiry is whether the conduct is "inherently expressive." Rumsfeld v. Forum for Acad. & Institutional Rights, Inc., 547 U.S. 47, 66, 126 S. Ct. 1297, 164 L. Ed. 2d 156 (2006) (FAIR).

Here, the forum being restricted—social media platforms—informs our analysis. As the United States Supreme Court recently noted, one of the most important places for the exchange of views in our modern society is "cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular." Packingham, 582 U.S. at 104 (quoting Reno v. Am. Civil Liberties Union, 521 U.S. 844, 868, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997)). "Social media offers 'relatively unlimited, low-cost capacity for communications of all kinds' " and allows users to "engage in a wide array of protected First Amendment activity on topics 'as diverse as human thought.' " Packingham, 582 U.S. at 104-05 (quoting Reno, 521 U.S. at 870) (internal quotation marks omitted).

It is well-established that online posts may constitute speech or expressive conduct. See, e.g., Reno, 521 U.S. at 870 (First Amendment applies to publication of information on the Internet); Johnson v. Ryan, 186 Wn. App. 562, 580-81, 346 P.3d 789 (2015) (former employee's internet blog posts about dispute with employer were speech); Thomson v. Doe, 189 Wn. App. 45, 58, 356

6

P.3d 727 (2015) (anonymous poster's review on online lawyer review website was speech); State v. Kohonen, 192 Wn. App. 567, 580, 370 P.3d 16 (2016) (student's posts on the Twitter platform were speech); see also Bland v. Roberts, 730 F.3d 368, 386 (4th Cir. 2013) (liking a page on Facebook communicates approval and implicates First Amendment protections).  Thus, posts on social media expressing varying views and opinions can be protected forms of speech.  But determining whether an online post is speech or conduct presents a complex question, dependent on the context, content, and, at times, the speaker at issue.

In the present case, the context and speakers at issue weigh heavily in favor of categorizing the act of posting a recorded IME to social media as expressive conduct.  The Internet, and social media in particular, is the "modern public square," and is, for many, "the principal source[] for knowing current events, checking ads for employment, speaking and listening, . . . and otherwise exploring the vast realms of human thought and knowledge."  Packingham, 582 U.S. at 99.  Social media sites provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard."  Packingham, 582 U.S. at 107.  Commenting on, reposting, or liking a user's post can communicate either an approval or disagreement with the original user's posting.  See, e.g., Bland, 730 F.3d at 386 (liking a Facebook page communicates approval).  As the Supreme Court noted in Packingham, "[f]oreclosing access to social media altogether thus prevents users from engaging in the legitimate exercise of First Amendment rights."  582 U.S. at 99.  Because the purpose of social media is to

7

connect with others and to share thoughts and opinions, it follows that, in general, users post on social media with the intent to communicate.

Further, given the nature of a worker's compensation claim, the context of why a worker may choose to record or post an IME to social media also supports a conclusion that such a post is expressive conduct. The legislature passed RCW 51.36.070 with the goal of protecting injured workers during an innately adversarial process. When the legislature considered Substitute House Bill 1068, public testimony in favor of the bill highlighted the need for transparency during IMEs. See, e.g., SUBSTITUTE H.B. REP. ON H.B. 1068, 68th Leg., Reg. Sess. (Wash. 2023); SUBSTITUTE S.B. REP. ON H.B. 1068, 68th Leg., Reg. Sess. (Wash. 2023). Allowing workers to record their IMEs neutralizes the power imbalance between injured workers and doctors, provides workers with a mechanism of disputing diagnoses or care they may not agree with, and incentivizes providers to offer quality care. See SUBSTITUTE S.B. REP. ON H.B. 1068, 68th Leg., Reg. Sess. (Wash. 2023). It stands to reason that workers who choose to share their recorded IME with others, in the midst of an adversarial process, do so with the obvious intent of communicating either displeasure or agreement with the treatment they received.

It is clear that the act of posting a recorded IME to social media is expressive conduct warranting free speech protections. By posting an IME to social media, injured workers intend to convey a particularized message about their worker's compensation claim or about the IME provider. Given that the videos would be posted to social media, a platform for sharing ideas and

8

communicating with others, the likelihood that the worker's message is understood by those who view the video is especially great.

Although the parties do not address on appeal whether posting an IME to social media is expressive conduct, the State did address this question before the trial court in its motion for summary judgment. There, the State argued that "[p]osting a recorded medical examination online is an action of uploading a recording online through computer commands," and therefore, conduct and not speech. But this analysis misses the mark and ignores case law expressly concluding that social media posts—which, by their very nature, are all acts of uploading something through computer commands—can be expressive conduct or speech. See, e.g., Kohonen, 192 Wn. App. at 580 (student's posts on Twitter were speech).

The State also relied heavily on FAIR before the trial court to support its contention that posting a recorded IME to social media is not speech. In FAIR, a group of law schools and faculty members challenged the constitutionality of a law that required higher education institutions to provide military recruiters on campus with access to students and facilities equal to that of nonmilitary recruiters. 547 U.S. at 52, 55. The United States Supreme Court noted that the act of denying military recruiters the same access to students was not "inherently expressive," and therefore, did not violate the First Amendment. FAIR, 547 U.S. at 66. The Court explained that additional speech would be necessary for an outside observer to understand that the school's reasoning for denying military recruiters' favorable access was to protest the military's "Don't Ask, Don't Tell"

9

policy. FAIR, 547 U.S. at 66. The Court noted that "if combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' by simply talking about it." FAIR, 547 U.S. at 66.

But FAIR is distinguishable from the present case. Here, the forum involved—social media—is inherently expressive. The context and conduct at issue here are also more specific. Against the backdrop of a worker's compensation claim, an inherently adversarial procedure, it logically follows that workers would choose to post a recorded IME to express an opinion regarding their medical treatment. Such a posting is expressive conduct.

<u>Whether RCW 51.36.070(4)(g) Is a Prior Restraint</u>

We must next determine whether RCW 51.36.070(4)(g) is a time, place, and manner restriction or a prior restraint. The Workers assert that the subsection is a prior restraint because it forecloses access to social media altogether. We agree.

"A prior restraint is an administrative or judicial order forbidding communications prior to their occurrence." Soundgarden v. Eikenberry, 123 Wn.2d 750, 764, 871 P.2d 1050 (1994). Prior restraints seek to prohibit future speech, as opposed to punishing past speech. Voters Educ. Comm., 161 Wn.2d at 494. "[U]nlike the First Amendment, article I, section 5 categorically prohibits prior restraints on constitutionally protected speech." Bradburn v. N. Cent. Reg'l Library Dist., 168 Wn.2d 789, 801, 231 P.3d 166 (2010). " 'Temporary restraining orders and permanent injunctions—i.e., court orders that actually

forbid speech activities—are classic examples of prior restraints.' " In re Marriage of Suggs, 152 Wn.2d 74, 81, 93 P.3d 161 (2004) (quoting Alexander v. United States, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993)). Statutes that prohibit speech or expression may also be unconstitutional prior restraints. See, e.g., Soundgarden, 123 Wn.2d at 778 (determining that statute banning erotic sound recordings was a prior restraint).

But not every regulation on speech is a prior restraint. "[A] regulation may not rise to the level of a prior restraint if it is merely a valid time, place or manner restriction on the exercise of protected speech." State v. Coe, 101 Wn.2d 364, 373, 679 P.2d 353 (1984). Because subsection (4)(g) contains no temporal limits, and because "social media" is far too broad a concept to constitute a geographic limit, the subsection cannot be characterized as a time or place restriction. We are also unconvinced that the subsection is a valid "manner" restriction; it forecloses virtually all access to sharing a recorded IME.

The subsection at issue in this case is more properly characterized as a prior restraint. Soundgarden is instructive here. The statute at issue in Soundgarden, the 1992 "Erotic Sound Recordings" statute,[2] required an "adults only" notice on any recorded material deemed "erotic" by a superior court. Soundgarden, 123 Wn.2d at 760. The statute also prohibited all dealers and distributors from " 'displaying erotic publications or sound recordings in their store windows, on outside newsstands on public thoroughfares, or in any other manner so as to make an erotic publication or the contents of an erotic sound recording

---

[2] Former RCW 9.68.060 (1992), repealed by LAWS OF 2024, ch. 232, § 6.

readily accessible to minors.' " <u>Soundgarden</u>, 123 Wn.2d at 760 (emphasis omitted) (quoting former RCW 9.68.060 (2004)). The statute provided for civil contempt and criminal penalties for anyone who sold, distributed, or exhibited material to a minor after a court had determined the material to be erotic. <u>Soundgarden</u>, 123 Wn.2d at 761. Our Supreme Court held that the statute constituted a prior restraint on protected speech as applied to adults because, by requiring the "adults only" label, the statute denied recording artists and merchants their right to and not to speak. <u>Soundgarden</u>, 123 Wn.2d at 766, 778.

The statute at issue here, RCW 51.36.070(4)(g), is akin to the statute at issue in <u>Soundgarden</u>. The subsection states: "The worker may not post the recording to social media." RCW 51.36.070(4)(g). And under RCW 51.48.080, failure to comply with the statute results in a penalty of up to $1,000. Much like the statute at issue in <u>Soundgarden</u>, subsection (4)(g) forecloses any opportunity for injured workers to share their recorded IMEs to social media. This blanket prohibition is a hallmark of a prior restraint. We conclude that the statute is an impermissible prior restraint on speech and affirm the decision of the trial court.

Affirmed.

_Smith, C.J._

WE CONCUR:

_Feldman, J._      _Dwyer, J._