# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| SCOTT ICEBERG, | No. 60983-5-II |
| Appellant, | |
| v. | |
| DEBORAH TIGERSON, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, J. – Scott Iceberg appeals the trial court's grant of summary judgment in favor of Deborah Tigerson in the 42 U.S.C. §1983 lawsuit he filed against her. The action arose from an email Tigerson, a Division of Vocational Rehabilitation (DVR) employee, sent to Iceberg.

Iceberg had a history of sending vulgar and offensive emails to DVR staff. In response, DVR told Iceberg that he could send emails only to a single customer service email address. DVR did not limit what kinds of communications Iceberg could send to the approved email address. After Iceberg violated this restriction, Tigerson sent an email to Iceberg asking him to stop sending derogatory, harassing, or threatening emails to members of the DVR staff. She stated that her request was supported by RCW 9A.76.180, which criminalizes intimidating a public official.

We hold that (1) Tigerson's email did not violate Iceberg's rights under the First Amendment to the United States Constitution because his speech was contrary to a valid time, place, and manner restriction and therefore could be regulated; and (2) Iceberg does not have standing to challenge the constitutionality of RCW 9A.76.180. Accordingly, we affirm the trial court's grant of summary judgment in favor of Tigerson.[1]

FACTS

DVR works to help people with disabilities find job opportunities and develop vocational skills. During the period of time relevant to this appeal, Tigerson worked at DVR as a customer relations manager. Iceberg has engaged with DVR to receive its services since at least 2014.

Although no official action had been taken, it appears that in January 2023 Iceberg believed that his claim was being closed.

On February 13, 2023, Iceberg sent multiple emails to DVR employees, including Tigerson. These emails used profanity and included personal insults. The messages included a request for records related to a DVR employee's sexual orientation, requested a DVR employee's home address, discussed that Iceberg was planning on contacting DVR employees indefinitely, and referred to contacting DVR employees in person. In one email, Iceberg threatened to "use every single legal recourse I have to ensure you are no longer employed by the State of Washington." Clerk's Papers (CP) at 1511. In another email, Iceberg referenced his plans to file several lawsuits and stated "you are going to regret the acts and omissions you have engaged in." CP at 1542.

That day, Tigerson responded to Iceberg with an email that stated in part,

---

[1] Iceberg's notice of appeal also challenged the trial court's grant of a temporary order restricting Iceberg from further litigation as a vexatious litigant. However, he does not address this issue in his brief. Therefore, we do not consider it.

2

> **This email is to request that you please refrain from sending any additional derogatory, harassing or threatening emails to myself and other DVR employees.** DVR staff members are dedicated to providing assistance to a variety of customers and they would undoubtedly appreciate it if you conduct yourself in civil fashion. This request is supported by the Revised Code of Washington (RCW) 9A.76.180 re: **Intimidating a public servant**.

CP at 1544.

On February 16, the director of DVR sent Iceberg a communication inviting him to develop a behavioral contract regarding how he communicated with DVR. The contract indicated that if Iceberg did not sign the behavior contract, he would only be permitted to contact DVR through a single physical address and email address. Iceberg stated that he would not sign the contract.

On March 2, DVR sent a letter notifying Iceberg that his DVR case was being closed. DVR stated that it closed Iceberg's case because he refused to complete a background check and a psychological risk assessment.[2]

On March 23, Iceberg sent the following email to a DVR employee as well as to the DVR customer service representative email address,

> I just wanted to go ahead and exercise my First Amendment rights to let you know I think you are an ignorant piece of sh[**], and that you should quit DVR, and get a job more appropriate such as working at Walmart, or a gas station. Please, go f[***] yourself. I look forward to meeting you in person so that I can reiterate the above.

CP at 610.

On March 27, Tigerson sent the following reply email to Iceberg from the DVR customer service representative email address:

---

[2] Iceberg subsequently sought administrative review of this decision. Tigerson represented DVR in the administrative review process. Judgment was entered in favor of DVR in that case because the administrative law judge found that DVR properly closed Iceberg's case.

> You are instructed to Cease and Desist the ongoing verbally abusive and harassing behavior towards DVR staff. You have been given notice of this in previous communications, including from the director of DVR. Your ongoing vulgarity and harassing communications are in violation with the law. This request is supported by the Revised Code of Washington (RCW) 9A.76.180 re: Intimidating a public servant.

CP at 610.

In August 2024, Iceberg sued Tigerson in her personal capacity under 42 U.S.C. §1983, alleging that she violated his First Amendment rights. CP 1, 3. The complaint identified only Iceberg's March 23, 2023 email as speech protected by the First Amendment. CP 3 (¶¶ 11, 12). And the complaint stated that Tigerson's March 27 email was retaliation for that speech. CP 3 (¶13). The complaint alleged that by "citing a criminal statute, RCW 9A.76.180, in response to Plaintiff's protected speech, that Defendant is trying to intimidate Plaintiff into ceasing his protected activity under the First Amendment, and otherwise silence Plaintiffs criticism." CP 4 (¶17).

Tigerson moved to dismiss Iceberg's claim under CR 12(b), CR 12(c), and CR 56.[3] Tigerson argued that she was entitled to qualified immunity because DVR imposed reasonable time, place, and manner restrictions on Iceberg's speech and his attempts to circumvent those restrictions were not protected activity. Therefore, her email did not violate a clearly established constitutional right and she was entitled to qualified immunity. CP 1633-35.

The trial court granted summary judgment in favor of Tigerson and dismissed Iceberg's complaint. The court's order stated that Tigerson's email did not violate the First Amendment

---

[3] Iceberg subsequently filed motions to compel discovery responses and to stay the summary judgment motion under CR 56(f). Iceberg also moved under GR 33 for more time to reply to Tigerson's response to the motions. Iceberg failed to appear at the hearing on the motions, and the trial court struck them. As a result, the court denied the GR 33 motion as moot. Iceberg also filed a notice seeking to disqualify the trial court judge. The record does not include how the trial court addressed this notice.

because Iceberg had violateda reasonable and content neutral time, place, and manner restriction and that Tigerson was entitled to qualified immunity. The court stated that "Defendant is granted summary judgment." CP at 12.[4]

Iceberg appeals the trial court's summary judgment order.

## ANALYSIS

A. STANDARD OF REVIEW

We review a CR 12(b)(6) motion to dismiss de novo. *Wiklem v. City of Camas*, 31 Wn. App.2d 575, 584, 551 P.3d 1067 (2024), *review denied*, 4 Wn.3d 1002 (2025). However, where a trial court considers information outside of the complaint, a motion to dismiss is treated as a summary judgment motion under CR 56. *Id*. Here, both Tigerson and Iceberg submitted documents outside of the complaint with their motion to dismiss and the response thereto, which the trial court necessarily reviewed. And the court's order stated that it was granting summary judgment. Therefore, we review this appeal under the summary judgment standard.

We review a trial court's decision on a summary judgment order de novo. *Id*. We consider all the evidence and apply all reasonable inferences in the light most favorable to the nonmoving party. *Id*. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

We can affirm a trial court's grant of summary judgment on any ground supported by the record. *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125 (2021).

---

[4] After dismissal of the case on the merits, Tigerson sought an order designating Iceberg a vexatious litigant. The trial court granted this motion.

B.  FIRST AMENDMENT CLAIM

Iceberg argues that Tigerson's March 27 email violated his clearly established First

Amendment rights.  We disagree.[5]

1.  Legal Principles

a.  Liability under Section 1983

42 U.S.C. §1983 provides a cause of action to citizens who have been deprived of their

rights under the constitution and laws by someone acting under the color of state law.  Section

1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

To prevail on a §1983 claim, a party " 'must establish that they were deprived of a right secured

by the Constitution or laws of the United States, and that the alleged deprivation was committed

under color of state law.' " *Freedom Found. v. Teamsters Local 117 Segregated Fund*, 197 Wn.2d

116, 145, 480 P.3d 1119 (2021) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50,

119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)).

b.  First Amendment

The First Amendment states, "Congress shall make no law . . . abridging the freedom of

speech."  The First Amendment applies to the states through the Fourteenth Amendment.  *Ten

Injured Workers v. State*, 32 Wn. App. 2d 124, 130, 553 P.3d 726 (2024).

---

[5] Because of our holding, we do not address whether Tigerson had qualified immunity against a § 1983 claim.

Under the First Amendment, government officials may not retaliate against people for having engaged in protected speech. *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474, 142 S. Ct. 1253, 212 L. Ed. 2d 303 (2022). To succeed in a claim for First Amendment retaliation a plaintiff must establish,

> (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*O'Handley v. Weber*, 62 F.4th 1145,1163 (9th Cir. 2023) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)). Retaliatory speech may serve as the basis for a First Amendment retaliation claim when it " 'intimat[es] that some form of punishment or adverse regulatory action would follow.' " *Greisen v. Hanken*, 925 F.3d 1097, 1114 (9th Cir. 2019) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)).

However, the government may regulate certain types of speech without violating the First Amendment. *See Wilkinson v. Med. Comm'n*, 35 Wn. App. 2d 350, 391, 576 P.3d 1191 (2025), *review denied*, 586 P.3d 617 (2026). For example, the government may impose reasonable time, place, and manner restrictions. *Id*. Speech that violates a reasonable time, place, and manner restriction may be regulated without violating the First Amendment. *See City of Lakewood v. Willis*, 186 Wn.2d 210, 217, 375 P.3d 1056 (2016) ("As protected speech, begging may be subject to reasonable time, place, or manner restrictions."); *State v. Noah*, 103 Wn. App. 29, 42, 9 P.3d 858 (2000) (stating that an antiharassment order that "proscribes what would otherwise be constitutionally protected conduct" will be upheld if the "restrictions . . . are valid time, place, and manner restrictions.").

Whether a time, place, and manner restriction is permissible depends on the forum in which the speech occurs. *Willis*, 186 Wn.2d at 217. Speech in nonpublic forums may be regulated if the restriction is " 'reasonable in light of the purpose served by the forum' " and is viewpoint neutral. *Id.* at 217-18 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995)). A law restricting speech in a public forum is valid only if it is narrowly tailored to serve a significant government interest, content-neutral, and " 'leave[s] open ample alternative channels of communication.' " *Id.* at 217 (quoting *City of Seattle v. Mighty Movers, Inc.*, 152 Wn.2d 343, 350, 96 P.3d 979 (2004)).

In *L.F. v. Lake Washington School District #414,* a school district imposed a communication restriction on a parent who engaged in a pattern of sending numerous insulting, demanding, and accusatory emails, and intimidating district employees in person. 947 F.3d 621, 623, 627 (9th Cir. 2020). The school district imposed a communication restriction that limited the parent's communication with district staff to biweekly meetings with specific staff members. *Id.* at 624. The parent sued, alleging that the plan violated the First Amendment. *Id.* The court stated,

> [T]he District was within its rights to impose such a limitation. Members of the public do not have a constitutional right to force the government to listen to their views. . . . And the First Amendment does not compel the government to respond to speech directed toward it. . . . Because government entities such as the District do not have to listen to parents' views, it is not a constitutional violation to require that parents, if they wish to be heard, communicate only with particular staff members or do so only at a specified time and place.

*Id.* at 626 (citations omitted). The court stated that because the communication plan was valid, "it did not violate L.F.'s First Amendment rights even if it restricted his speech." *Id.* at 627.

In addition, "speech made with the intent to facilitate criminal conduct" or " 'speech integral to criminal conduct' " is unprotected speech. *State v. Homan*, 191 Wn. App. 759, 768,

364 P.3d 839 (2015) (quoting *United States v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010)).

2.   Analysis

Tigerson argues that Iceberg's email was not protected because it violated a reasonable time, place, and manner restriction.  We agree.

As a threshold matter, Tigerson argues that the individual email addresses that this communication plan restricted Iceberg from contacting a nonpublic forum because they were messages that the general public would never view.  Br. of Resp. at 30-32.  Iceberg does not address this issue.  Accordingly, we conclude that this speech occurred in a nonpublic forum.

Time, place, and manner restrictions in nonpublic forums are permissible if they are " 'reasonable in light of the purpose served by the forum' " and viewpoint-neutral.  *Willis*, 186 Wn.2d at 217-18 (quoting *Rosenberger*, 515 U.S. at 829).  Here, like the communication plan discussed in *L.F.*, the limitation on Iceberg's speech was a reasonable effort to manage Iceberg's incessant and offensive communications.  *See* 947 F.3d at 627.  In addition, the restriction was viewpoint-neutral because Iceberg was free to communicate any opinion or perspective to DVR through the appropriate channels.  Further, DVR did not completely block Iceberg's speech – he was given a reasonable alternative form of communication.  Accordingly, we hold that DVR's limitation on Iceberg's speech was a constitutional time, place, and manner restriction.

Iceberg's March 23 email violated this restriction.  Consequently, that speech could be regulated without violating the First Amendment.  *See  Willis*, 186 Wn.2d at 217.  Therefore, we conclude he has failed to establish that Tigerson violated his First Amendment rights by enforcing the valid restriction on how he could communicate with DVR.  *See L.F.*, 947 F.3d at 627.

Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Tigerson regarding Iceberg's First Amendment retaliation claim.[6]

C.        STANDING TO CHALLENGE RCW 9A.76.180

Iceberg argues that RCW 9A.76.180 is unconstitutional. Tigerson argues that Iceberg does not have standing to challenge RCW 9A.76.180. We agree with Tigerson.

Standing refers to a party's right to make a legal claim or seek judicial enforcement of a right. *Wash. State Ass'n of Counties v. State*, 34 Wn. App. 2d 879, 890, 572 P.3d 1225 (2025). A litigant must have a real interest at stake in the issue before bringing a cause of action. *See Stevens County v. Stevens County Sheriff's Dept.*, 20 Wn. App. 2d 34, 41-42, 499 P.3d 917 (2021). The cornerstone of standing doctrine is that a person who is not adversely affected by a statute may not challenge the statute's validity. *Id.* at 42. Therefore, a party typically must demonstrate that the statute has operated to its prejudice to challenge the constitutionality of a statute. *Forbes v. Pierce County*, 5 Wn. App. 2d 423, 434, 427 P.3d 675 (2018).

However, a party may bring a pre-enforcement challenge to a statute in certain circumstances. *See id.* at 435-36. For example, a plaintiff may bring a pre-enforcement challenge if they allege that they intend to engage in conduct "arguably protected by the Constitution, but proscribed by statute, when there has been a credible threat of prosecution." *Id.* at 436.

Although Iceberg claims that Tigerson's citation to the statute was a veiled threat of prosecution, the email referenced the statute as *support* for the cease and desist request. The

---

[6] In his complaint, Iceberg also alleged that Tigerson arranged to have his DVR case closed in retaliation for his protected speech. But the trial court granted summary judgment regarding these arguments in favor of Tigerson because the claim was not brought against DVR directly under the Administrative Procedure Act, Chapter RCW 34.05. Iceberg does not address this issue in his briefing. Accordingly, we decline to address this issue.

10

email did not indicate that Tigerson had any intent – or ability – to impose criminal penalties on Iceberg. And Iceberg has not alleged that he intends to engage in conduct that arguably could violate the statute in the future. Therefore, whether Iceberg will violate RCW 9A.76.180 and whether he will be subject to criminal penalty under the statute at that point is entirely speculative.

Accordingly, we hold that Iceberg lacks standing to challenge RCW 9A.76.180.

D.      ATTORNEY FEES

Iceberg requests attorney fees under RAP 18.1. Typically, the prevailing party in a § 1983 claim is entitled to attorney fees under 42 U.S.C. §1988. But Iceberg is not the prevailing party. Accordingly, we deny his request for attorney fees.

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of Tigerson.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
VELJACIC, C.J.

_____
CHE, J.

11